**LEE LITIGATION GROUP, PLLC**
CK Lee (CL 4086)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

VICTOR ABEL,
*on behalf of himself,*
*FLSA Collective Plaintiffs, and the Class,*

Plaintiff,

v.

PMACS HOSPITALITY LLC,
PMACS 9 LLC
d/b/a SIR HENRY'S
d/b/a DISCO SALLY'S,
PATRICK MCNAMEE, and
MICHAEL MCNAMEE,

Defendants.

Case No.:

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Jury Trial Demanded

Plaintiff VICTOR ABEL (herein, "Plaintiff"), on behalf of himself and others similarly situated, by and through their undersigned attorneys, hereby file this Class and Collective Action Complaint against Defendants, PMACS HOSPITALITY LLC, PMACS 9 LLC d/b/a SIR HENRY'S d/b/a DISCO SALLY'S ("Corporate Defendants"), PATRICK MCNAMEE, and MICHAEL MCNAMEE ("Individual Defendants") (each individually, "Defendant" or, collectively, "Defendants") and state as follows:

## INTRODUCTION

1. Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), that he and similarly situated individuals are entitled to recover from Defendants: (1) unpaid overtime wages, due to timeshaving; (2) liquidated damages; and (3) attorneys' fees and costs.

2. Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), they and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to timeshaving; (2) statutory penalties; (3) liquidated damages; and (4) attorneys' fees and costs.

3. Plaintiff further alleges that, pursuant to NYLL § 196-b and the Earned Safe and Sick Time Act ("ESSTA"), Defendants violated their statutory rights by failing to provide Plaintiff with earned sick leave and thereby denying them the corresponding compensation.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

## PARTIES

6. Plaintiff VICTOR ABEL is a resident of New York County, New York.

7. Defendants PATRICK MCNAMEE and MICHAEL MCNAMEE own and operate bars and restaurants throughout New York City, including the following sixteen (16) restaurants:

(i) The Three Monkeys – 832 8th Avenue, New York, NY 10019

(ii) The Mean Fiddler – 266 W 47th Street, New York, NY 10036

(iii) The Woo Woo – 266 W 47th Street, New York, NY 10036

(iv) Vida Verde Mexicana – 248 W 55th Street, New York, NY 10019

(v) Tiki Tequila – 248 W 55th Street, New York, NY 10019

(vi) Bartley Dunnes – 160 W 54th Street, New York, NY 10019

(vii) Fernando's Highway – 160 W 54th Street, New York, NY 10019

(viii) Miss Nellie's – 321 W 44th Street, New York, NY 10036

(ix) Tanner Smith's – 204 W 55th Street, New York, NY 10019

(x) Polly's – 204 W 55th Street, New York, NY 10019

(xi) The Dickens – 783 8th Avenue, New York, NY 10036

(xii) Sir Henry's – 795 8th Avenue, New York, NY 10019

(xiii) Disco Sally's – 795 8th Avenue, New York, NY 10019

(xiv) Haswell Greens – 240 W 52nd Street, New York, NY 10019

(xv) Winnie's – 240 W 52nd Street, New York, NY 10019

(xvi) Dutch Freds – 307 W 47th Street, New York, NY 10036

(xvii) Central Park Tavern – 327 W 57th St, New York, NY 10019

(collectively, along with any other locations operated by PATRICK MCNAMEE and MICHAEL MCNAMEE, the "Locations")

8. All Locations are owned, managed, and operated by Individual Defendants PATRICK MCNAMEE and MICHAEL MCNAMEE under the parent company PMACS HOSPITALITY LLC as a single integrated enterprise. Specifically, Defendants engaged in identical activities, shared common ownership and have a common business purpose:

a) All the Locations are advertised together on a common website: https://pmacshospitality.com. *See* **Exhibit A:** Screenshot of the location page.

b) All the Locations are advertised as one entity with different locations. *See* **Exhibit B:** an article from "City Guide NY"; https://www.cityguideny.com/article/pmacs-hospitality-group-bars-restaurants-midtown-dutch-freds-tanner-smiths-vida-verde1.

c) The Locations share common ownership through Individual Defendants. *See* **Exhibit C**; https://pmacshospitality.com/our-team.

d) Individual Defendants PATRICK MCNAMEE and MICHAEL MCNAMEE are listed as principals on liquor licenses associated with the Defendants' current addresses of operation. *See* **Exhibit D**.

e) Some locations' websites contain a reference to the website of PMACS HOSPITALITY LLC; *See* **Exhibit E**.

f) Corporate Defendant PMACS 9 LLC shares corporate identity similar to its parent company, PMACS HOSPITALITY LLC. For instance, Defendants' Sir Henry's, and Disco Sally's are represented by PMACS 9 LLC, a corporate entity with "PMACS" as part of its name.

g) All Locations jointly advertise that they offer benefits to all employees, including but not limited to paid training and employee discounts.

h) All the Locations are advertised on a common Instagram and Facebook page. *See* **Exhibit F**.

9. Corporate Defendant PMACS HOSPITALITY LLC is a domestic limited liability company headquartered at 240 W 52nd Street, Floor 4, New York, NY 10019, with an address for service of process at 888C 8th Avenue, Box #220, New York, NY 10019. Corporate Defendant PMACS HOSPITALITY, LLC is the parent company to the Locations.

10. Corporate Defendant PMACS 9 LLC d/b/a SIR HENRY'S, d/b/a DISCO SALLY'S is a domestic limited liability company with a principal place of business located at 795 8th Avenue, New York, NY 10019, and the address for service of process at 795 8th Avenue, New York, NY, United States, 10019.

11. At all relevant times, each Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and NYLL and the Regulations thereunder.

12. Individual Defendant PATRICK MCNAMEE is an owner and principal of the Corporate Defendants. PATRICK MCNAMEE exercised control over the terms and conditions of Plaintiff's employment and those of FLSA Collective Plaintiffs and the Class. PATRICK MCNAMEE had the power and authority to (i) fire and hire employees, (ii) supervise and control Plaintiff's, FLSA Collective Plaintiffs' and Class members' schedules, (iii) determine the rate and method of pay, (iv) maintain employment records, and (v) otherwise affect the quality, terms and conditions of employment for Plaintiff, FLSA Collective Plaintiffs and Class members at Defendants' Locations.

13. Individual Defendant MICHAEL MCNAMEE is an owner and principal of the Corporate Defendants. MICHAEL MCNAMEE exercised control over the terms and conditions of Plaintiff's employment and those of FLSA Collective Plaintiffs and the Class. MICHAEL MCNAMEE exercised functional control over the business and financial operations of the Corporate Defendant. MICHAEL MCNAMEE had the power and authority to (i) fire and hire employees, (ii) supervise and control Plaintiff's, FLSA Collective Plaintiffs' and Class members' schedules, (iii) determine the rate and method of pay, (iv) maintain employment records, and (v) otherwise affect the quality, terms and conditions of employment for Plaintiff, FLSA Collective Plaintiffs and Class members at Defendants' Locations.

14. At all relevant times, each Defendant was an "employer" and "person" within the meaning of Section 15(a) of the FLSA, Section 215 of the NYLL, and Section 20-912 of the ESSTA.

15. At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs and Class members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

16. Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt front-of-house and back-of-house employees (including waiting staff, delivery persons, line cooks, dish washers, servers, runners, bussers, porters, among others) employed by Defendants on or after the date that is six (6) years before the filing of this Complaint (herein, "FLSA Collective Plaintiffs").

17. At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their proper wages, including overtime wages, due to timeshaving.

18. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

19. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

20. Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt front-of-house and back-of-house employees (including waiting staff, delivery persons, line cooks, dish washers, servers, runners, bussers, porters, among others) employed by Defendants at all locations, on or after the date that is six

years before the filing of the Complaint (the "Class" or "Class members").

21. The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

22. The proposed Class is numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. Plaintiff is a member of the Class.

23. Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, including: (i) failing to pay all earned wages, including overtime wages, due to a policy of timeshaving, (ii) failing to provide earned sick days, (iii) failing to provide wage statements in compliance with the NYLL, and (iv) failing to provide proper wage and hour notices upon hiring and as required thereafter, pursuant to the NYLL. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

24. Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

25. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because of losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

26. Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

27. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a. Whether Defendants employed Plaintiff and the Class within the meaning of the NYLL and ESSTA;

b. What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiff and the Class members;

c. Whether Defendants accurately tracked the number of hours earned for sick leave under the ESSTA;

d. Whether Defendants properly compensated Plaintiff and Class Members for their earned sick leave;

e. At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and the Class members for their work;

f. Whether Defendants properly notified Plaintiff and Class members of their hourly rates and overtime rates;

g. Whether Defendants paid Plaintiff and Class members the proper compensation for all hours worked under the NYLL;

h. Whether Defendants operated their business with a policy of not compensating employees for all hours worked, due to timeshaving;

i. Whether Defendants provided Plaintiff and Class Members with proper wage and hour notices, at their dates of hiring and annually, per requirements of the New York Labor Law; and

j. Whether Defendants provided proper wage statements informing all non-exempt employees of information required to be provided on wage statements as required under the NYLL.

## STATEMENT OF FACTS

*Summary of Plaintiff's' Employment*

In or around February 2024, Plaintiff was hired by Defendants to work full-time as a Cook for Defendants' Sir Henry's cocktail bar, located at 795 8th Ave, New York, NY 10010, until his termination in October 2025.

28. At all relevant times, Plaintiff was compensated at an hourly rate of twenty dollars ($20.00). FLSA Collective Plaintiffs and Class members holding back-of-house positions were compensated at similar rates.

29. Throughout his employment, Plaintiff's scheduled shifts varied, but he typically worked about thirty-five (35) to forty-five (45) hours per week.

*Unpaid Wages Due to Timeshaving*

30. At all relevant times, Plaintiff, FLSA Collective Plaintiffs, and Class members were not paid for all hours worked, including overtime, due to Defendants' illegal policy and practice of timeshaving.

31. While Plaintiff was scheduled to work until around 12:30 a.m., which was near the end of kitchen service at Defendants' Sir Henry's Location, Defendants required him to continue working until approximately 1:30 to 2:00 a.m. However, Defendants never compensated Plaintiff for this time, and as a result, Plaintiff received significantly less wages than they were owed.

32. For example, approximately twice per week, Plaintiff was required to stay after the end of kitchen service for approximately sixty (60) to ninety (90) minutes to clean the kitchen, but he was not compensated for this off-the-clock time. This amounted to two to three timeshaved hours per week.

33. Similarly, FLSA Collective Plaintiffs and Class members were required to work after their shift for an additional sixty (60) to ninety (90) minutes a day but were not compensated for the work they performed.

34. At all relevant times, Defendants knowingly and willfully operated their business with a policy of failing to pay wages and overtime wages to Plaintiff, FLSA Collective Plaintiffs and Class Members for all hours they worked due to Defendants' policy of timeshaving, in violation of the FLSA and the NYLL.

*Plaintiff's' Sick Leave Violation Claims*

35. During Plaintiff's' employment, Defendants engaged in adverse actions against Plaintiff and Class Members by refusing to provide any sick leave, in violation of the NYLL and the ESSTA.

36. Defendants maintained a general policy of not providing any sick leave—paid or unpaid—to employees.

37. Defendants did not offer any of their employees any paid time off ("PTO"). While the ESSTA does allow Employers to require that Employees use PTO for their ESSTA eligible sick

time if they wish to get paid, and to deny them pay for sick leave taken after all of the employee's PTO has been used, it also provides that if no PTO is offered, or if the PTO offered does not cover an equal or greater amount of time than is required by the ESSTA, then the employer must allow their employees access to paid time off as described by the law. Therefore, there is no system or policy under which Defendants could have reasonably denied Plaintiff's' requests by making the argument that he had voluntarily utilized his PTO to other purposes and was not entitled to pay for his sick days.

38. Defendants' refusal to provide paid sick leave to Plaintiff and Class Members violates their rights under the NYLL and the ESSTA.

*Plaintiff's' and Class Members' Wage Theft Prevention Act Claims*

39. Plaintiff and Class members never received wage notices accurately stating their base rate of hourly pay from Defendants. They also did not receive wage statements from Defendants accurately stating their base rate of hourly pay, overtime rate, or hours worked.

40. In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL—Defendants knowingly and willfully operated their business with a policy of not providing wage notices to Plaintiff and Class members at the beginning of their employment with Defendants.

41. In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the

> wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, at *21-22 (S.D.N.Y. March 20, 2020).

42. Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class members. Defendants' conduct actually harmed Plaintiff and Class members. Defendants' failure to provide wage notices and paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff's and Class members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

43. Had Defendants provided to Plaintiff and Class members proper wage statements, as required by law, Defendants would have had to either (a) increase the wages to correspond to the spread of hour premiums earned and reflect their unpaid wages or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the premiums that the employee actually earned. Either possibility would have allowed Plaintiff and Class members to vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

44. The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and Class members. This delayed payment caused Plaintiff and Class members to struggle to pay bills and other debts.

45. The direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. *See Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, at *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-21 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F.*, 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the [p]laintiffs earned $ 133,086 as reflected on his final year paystub and W-2").[1]

46. The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, at *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paystubs. The paystub processing service *realcheckstubs* explains: "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

and to calculate cash benefit rates.” (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (“Under the Social Security statute, entitlement depends on ‘the total of the wages paid . . . to an individual in a calendar year.’”) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

47. “In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, 2023 U.S. Dist. LEXIS 38163, at *18 (S.D.N.Y. Mar. 7, 2023). “On the other hand, ‘allegations’ that go ‘beyond asserting a bare statutory violation and sufficiently allege concrete harm’ resulting from ‘the underpayment of wages’ pass muster because ‘monetary injury is a concrete harm sufficient for purposes of Article III standing.’” *Thompson v. Elev8 Ctr. N.Y., LLC*, 2023 U.S. Dist. LEXIS 122504, at *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 (S.D.N.Y. July 14, 2022)).

48. Here, it is clear that Defendants’ failure to provide Plaintiff and Class members with accurate wage statements entailed “concrete, downstream consequences” involving monetary injury. Had the spread of hours premiums been accurately reported for a given pay period, Defendants’ automatic payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiff and Class members. That, in turn, would have increased Plaintiff's and Class members’ entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

49. Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he Plaintiffs' real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

50. The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiff and other employees rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*. Plaintiff and Class members lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

51. Whether or not any Class members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

52. The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks

> credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.
>
> All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income. *Id.*

*Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

53. Here, the problem is not merely challenging but insurmountable. Plaintiff and Class members cannot even attempt to have their earnings report corrected because Defendants *did* report what they actually paid Plaintiff and Class members. The problem, rather, is that Plaintiff and Class members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to their social security benefits as soon as Defendants sent their W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

54. Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff and Class members with wage notices and accurate wage statements, in violation of the NYLL.

55. Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class members, in this litigation and have agreed to pay the firm a reasonable fee for its services.

**STATEMENT OF CLAIM**
**COUNT I**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT**

56. Plaintiff realleges and incorporate all the above allegations of this Complaint as fully set forth herein.

57. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

58. At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

59. At all relevant times, Corporate Defendants had gross annual revenues in excess of $500,000.

60. At all relevant times, Defendants failed to pay Plaintiff and FLSA Collective Plaintiffs for all hours worked, due to their policy of timeshaving.

61. Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

62. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages, including their proper overtime premiums, when Defendants knew or should have known such was due.

63. Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

64. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

65. Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, unpaid wages and overtime due to timeshaving, plus an equal amount as liquidated damages.

66. Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

**COUNT II**
**VIOLATION OF THE NEW YORK LABOR LAW**

67. Plaintiff realleges and incorporate all the above allegations of this Complaint as fully set forth herein.

68. At all relevant times, Plaintiff and Class members were employed by the Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

69. Defendants willfully violated Plaintiff's and Class members' rights by subjecting them to a policy of failure to pay wages for all hours worked due to timeshaving.

70. Defendants failed to properly notify employees of their overtime rate, in direct violation of the New York Labor Law.

71. Defendants knowingly and willfully operated their business with a policy of not providing all non-exempt employees proper wage notice, at date of hiring and annually thereafter, as required under the New York Labor Law.

72. Defendants knowingly and willfully operated their business with a policy of not providing wage statements, as required under the New York Labor Law.

73. Due to Defendants' New York Labor Law violations, Plaintiff and Class members are entitled to recover from Defendants, unpaid wages due to timeshaving, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to New York Labor Law.

**COUNT III**
**VIOLATION UNDER THE EARNED SICK AND SAFE TIME ACT**

74. Plaintiff realleges and incorporate all the foregoing paragraphs of this Complaint as if fully set forth herein.

75. Defendants knowingly and willfully failed to provide Plaintiff and Class Members with sick leave as required under the NYLL and the ESSTA.

76. At all relevant times, Defendants are employers covered by NYLL's sick leave provision as an "employer with less than ninety-nine (99) employees must provide up to forty (40) hours of annual safe and sick time each calendar year." NYLL § 196-b(1)(b).

77. Defendants are required to give employees sick leave upon oral or written request for a "mental or physical illness, injury, health condition of such employee. . . regardless of whether such illness, injury, or health condition has been diagnosed or requires medical care at the time that such employee requests such leave." NYLL § 196-b(4)(a).

78. At all relevant times, Defendants employ five or more employees and are employers covered by the ESSTA's sick leave provision as an "'employer' as defined in subdivision (3) of section 190 of the labor law." ESSTA § 20-912.

79. Defendants are required to give paid sick time to their employees, upon request. The ESSTA provides that:

> All employers that employ five or more employees, all employers of one or more domestic workers, and any employer of four or fewer employees that had a net income of one million dollars or more during the previous tax year, shall provide paid safe/sick time to their employees in accordance with the provisions of this chapter. An employer shall pay an employee for paid safe/sick time at the employee's regular rate of pay at the time the paid safe/sick time is taken, provided that the rate of pay shall not be less than the highest applicable rate of pay to which the employee would be entitled pursuant to subdivision 1 of section 652 of the labor law, or any other applicable federal, state, or local law, rule, contract, or agreement. Such rate of pay shall be calculated without allowing for any tip credit or tip allowance set forth in any federal, state, or local law, rule, contract, or agreement.

ESSTA § 20-913(a).

80. Due to Defendant's NYLL and ESSTA violations, Plaintiff and Class members are entitled to all applicable remedies under the law, including compensatory damages, punitive damages, and attorneys' fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs and Class members, respectfully request that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA, the NYLL, and the ESSTA;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid wages and overtime wages as a result of Defendants' timeshaving, due under the FLSA and the NYLL;

d. An award of statutory penalties as a result of Defendants' failure to comply with New York Labor Law wage notice and wage statement requirements;

e. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to 29 U.S.C. § 216;

f. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to the NYLL;

g. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to provide sick leave pursuant to the NYLL and the ESSTA;

h. An award of pre-judgment and post-judgment interests, costs, and expenses of this action together with reasonable attorneys' and experts' fees and statutory penalties;

i. Designation of this action as a collective action pursuant to 29 U.S.C. § 216(b);

j. Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

k. Designation of this action as a class action pursuant to F.R.C.P. 23;

l. Designation of Plaintiff as Representative of the Class;

m. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: December 12, 2025

Respectfully submitted,

By: */s/ C.K. Lee*

C.K. Lee, Esq.
**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
148 West 24th Street, Second Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs and the Class*